# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA HUDSON D., | Case No. 1:14-CV-01855-LJO-SKO |
| Plaintiff, | **ORDER THAT PLAINTIFF'S FIRST AMENDED COMPLAINT BE DISMISSED WITH 30 DAYS LEAVE TO AMEND** |
| v. | |
| KATHERINE L. ARCHUELETA, Director, Office of Personnel Management, | (Doc. 6) |
| Defendants. | |

## I. INTRODUCTION

On January 20, 2014, Plaintiff Dana Hudson D. ("Plaintiff"), proceeding pro se and *in forma pauperis*, filed this her First Amended Complaint ("FAC") against Defendant Katherine L. Archeuleta, the Director of the Office of Personnel Management, apparently in her official capacity ("Defendant"). (Doc. 6.) For the reasons set forth below, Plaintiff's complaint is DISMISSED without prejudice and with leave to amend.

## II. PLAINTIFF'S ALLEGATIONS

It is difficult to discern the sequence of events and facts alleged in Plaintiff's meandering and disorganized amended complaint. The FAC is nearly identical to the original complaint, and adds little in the way of facts to illuminate the substance of Plaintiff's allegations against

Defendant.

Under the new section "Statement Of Claim," Plaintiff asserts that

> . . . .without my knowledge hospital officials notified the United States Department of Justice (USDOJ) sometime between May 2013 and August 2013 of adverse documents in my medical records in reference to violence and "I may never get it," interferences and the crimes committed violating my civil rights.

(Doc. 6, 2.)  Plaintiff further claims that she "was allowed by hospital officials and the USDOJ from November 2013 to March 2014 to oppose discrimination."  (Doc. 6, 2.)

In her "Facts" section, Plaintiff states that she was employed by the United States Post Office beginning October 7, 1977, as a "LSM Machine Operator," and eventually switched to a position as a "Mail Carrier" in 1983.  (Doc. 6, 2.)  In the course of her duties as a mail carrier, Plaintiff alleges that she sustained injuries to her right knee on August 5, 1988, and to her left knee on October 20, 1993.  (Doc. 6, 2.)

Plaintiff was put "on the Office of Workers' Compensation (OWCP) rolls" at some point, and her benefits were terminated in October of 2003 "in violation of [the] Rehabilitation Act[.]" (Doc. 6, 2.)  Plaintiff claims that she requested and was granted a hearing to review the termination of her Workers' Compensation benefits, and that her "rights to due process were violated" when she reviewed a "copy of the transcript from OWCP hearing office" and requested certain omitted information be added to the transcript. (Doc. 6, 2.)  Plaintiff appears to allege that the omitted information was that she "had not physically worked since December 26, 199 due to [her] disability of worn out knee replacement and surgeries."  (Doc. 6, 2.)  However, it is unclear from the FAC whether Plaintiff is simply stating this as a "fact" or alleging that Defendant or another entity is responsible for failing to include this information in the hearing transcript.

Plaintiff further alleges that "[s]ubsequently to the above, [she was] not given equal opportunity as disparate treatment [she is] continuously discriminated against by OPM and denied disability retirement" "with 28 years and 7 months of creditable service." (Doc. 6, 3.)  "As further disparate treatment without notification [she] was denied the right to due process and terminated on May 9, 2008 without ever [being returned] to work with reasonable accommodations in violation of the Rehabilitation Act[.]" (Doc. 6, 3.)  It is unclear how Defendant or another entity is

responsible for not returning her to work with reasonable accommodations. Though Plaintiff quotes the Rehabilitation Act to define "a reasonable accommodation," Plaintiff alleges no facts explaining Defendant's conduct, and what accommodation was not provided to her.

Plaintiff became totally and/or permanently disabled on May 28, 2010, when she was granted Social Security Disability benefits, and has had "numerous surgeries to [her] right knee including an infection and chronic pain several (*sic*) of the surgeries required knee replacements May 2010, June 2010, July 2010, May 2003, October 2002, May 2002, January 2001, June 1990, 1979 and 1972." (Doc. 6, 3.) Plaintiff had additional surgeries in May and August of 2013 "due to infection and botched and/or failed knee replacement." (Doc. 6, 4.) Plaintiff applied for "disability retirement" with Defendant on August 12, 2010, and then again in February 2013. (Doc. 6, 3.) She alleges that she contacted Defendant directly on April 9, 2013, "to inquire about retirement as detriment and disadvantage" and was told that she should "[g]et another government job" to become eligible for disability retirement. (Doc. 6, 4.) Plaintiff also "filed a complaint via the Congressman office" in April 2013 and again in August 2013 "to obtain disability retirement." (Doc. 6, 4.)

On December 18, 2013, Plaintiff received a letter from Defendant denying her disability retirement because she "will not become 62 years of age until January 28, 2020, [and therefore does] not meet the age requirements for a deferred retirement annuity." (Doc. 6, 4.) Arguing that "disability retirement under the Civil Service Retirement System (CSRS) is any age with five years of service[,]" Plaintiff appealed the denial of disability retirement benefits to the Merit System Protection Board ("MSPB") on January 3, 2014, and her appeal was denied on March 6, 2014. (Doc. 6, 4.)

Plaintiff alleges that she filed a complaint with the Equal Employment Opportunity Commission (EEOC) on July 16, 2014, and received a letter on October 30, 2014, informing her that "the MSPB did not address the issues and/or allegations of discrimination in violation of Title VII of the Civil Rights Act…therefore EEOC does not have jurisdiction [and she] can file a civil action in district court." (Doc. 6, 4.) It remains unclear from the complaint whether Plaintiff

3

received an actual "right-to-sue" letter from the EEOC, as one is not attached as an exhibit to the complaint.

Plaintiff concludes that

> It is hospitals officials who notified the USDOJ of the crimes committed against me as I am deprived the right to disability retirement the conduct of OPM it is alleged from medical records I will become an old lady and/or only my beneficiary will benefit.
>
> It is alleged by hospital officials civil rights violations were committed against me including botched and/or failed knee replacements and attempt to have my right leg amputated.
>
> . . . . It is hospital officials and the USDOJ who "addressed the issues of discriminations" and "I may never get it" in violation of [the Civil Rights Act]."

(Doc. 6, 5.)  Plaintiff provides no facts explaining or identifying the specific conduct or actions taken by Defendant, "hospital officials," or the "USDOJ" that constituted "crimes committed against [her.]"

Plaintiff alleges that the "discrimination were (*sic*) based on diagnosed and accepted as right and left knee Patellofemoral Chondromalacia and Arthritis Syndrome, Asthma and Plantar Fasciitis both feet."  (Doc. 6, 5.)  Plaintiff also contends that "it is alleged with false accusations [she] went dancing and camping that is how [she] sustained [her] job related injuries" "as interference in [her] medical records."  (Doc. 6, 5.)  It is unclear from the complaint whether Plaintiff is alleging that Defendant or another entity is responsible for this "discrimination."  There are again no facts alleging actions attributable to Defendant, or how Defendant allegedly harmed Plaintiff.

Plaintiff "want[s] the discrimination, civil rights violations and disparate treatment to stop immediately."  (Doc. 6, 5.)  She requests the Court to reinstate her Workers' Compensation benefits, as "if the discrimination had not occurred with creditable service 36 years and 11 months and disability retirement."  (Doc. 6, 5.)  She also requests both "front pay for unlawful termination" and "back pay in order to make whole for all terms and conditions of employment with monetary value[,]" as well as compensatory damages and punitive damages "for the harm suffered botched and failed knee replacements, sustain plantar fasciitis and wrong doing of

unlawful termination (*sic*)." (Doc. 6, 5.) She asks the Court to appoint an attorney, with fees and costs included in the relief requested. (Doc. 6, 6.) Finally, Plaintiff requests "[a]n order restraining defendant(s) from further acts of discrimination and/or civil rights violations." (Doc. 6, 6.)

### III. SCREENING STANDARD

In cases where the plaintiff is proceeding *in forma pauperis*, the Court is required to screen each case, and must dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the Court determines that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint are capable of being cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint may not simply allege a wrong has been committed and demand relief. The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation[;]" the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). Further, while factual allegations are accepted as true, legal conclusions are not. *Id.* (quoting *Twombly*, 550 U.S. at 555).

### IV. DISCUSSION

**A. Plaintiff Fails to Plead a Cognizable Federal Claim**

Plaintiff alleges claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* (Doc. 1.) Although both Title VII of the Civil Rights Act and Section 504 of the Rehabilitation Act prohibit

discrimination on the basis of disability, Title VII is only applicable in an employer-employee context, while the Rehabilitation Act prohibits discrimination in all federally funded programs. *See* 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 794(a). Though Plaintiff concludes that the termination of her Workers' Compensation benefits and denial of disability retirement were based on "discrimination, civil rights violations and disparate treatment" in violation of both laws, she fails to allege facts setting forth actions attributable to Defendant, or how Defendant allegedly harmed her.

### 1. Plaintiff Does Not Allege Facts Supporting a Claim of a Violation of Title VII of the Civil Rights Act

Plaintiff alleges that she appealed Defendant's denial of disability retirement benefits to the MSPB on January 3, 2014. (Doc. 6, 4.) In denying review of Defendant's decision, the MSPB allegedly "did not address the issues and/or allegations of discrimination in violation of Title VII of the Civil Rights Act[.]" (Doc. 6, 4.) When she then complained to the EEOC, she "receive[d] a letter from EEOC the MSPB did not address the issues and/ or allegations of discrimination in violation of Title VII of the Civil Rights Act . . . therefore EEOC does not have jurisdiction" and she could "file a civil action in district court." (Doc. 6, 4.) It remains unclear from the amended complaint just which entity Plaintiff is alleging discriminated against her, on what basis she was discriminated against, and the effect of the alleged discrimination. As currently pled, the first amended complaint fails to support a claim that Defendant violated Title VII of the Civil Rights Act.

#### a. Title VII Does Not Prohibit Discrimination on the Basis of Disability

Plaintiff's claims are based solely on allegations that Defendant discriminated against her based on her disability. (Doc. 6, 4 ("It is alleged I am discriminated against based on my disabilities.").) However, as Plaintiff was clearly informed in the Court's screening of her initial complaint (Doc. 5, 5-6), "<u>Title VII does not encompass discrimination on the basis of disability</u>." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093 n.8 (9th Cir. 2008) (emphasis added); *see also Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) ("Title VII does not proscribe discrimination on the basis of disability."); *Mitchell v. Chapman*, 343 F.3d 811, 824 n.12 (6th Cir.

2003) ("Title VII does not address disability discrimination."); *Brennan v. Nat'l Telephone Directory Corp.*, 881 F.Supp. 986, 996–97 (E.D. Pa. 1995) ("[W]hile Title VII prohibits discrimination based upon a person's 'race, color, religion, sex, or national origin,' 42 U.S.C. § 2000e–2, it *does not* prohibit disability discrimination." (italics added)). Plaintiff's complaint *does not* allege discriminatory conduct by Defendant on the basis of a class protected by Title VII.

Plaintiff's complaint of discrimination based on disability *does not* support a claim under Title VII of the Civil Rights Act.

### b. Plaintiff Has Not Fully Exhausted Her Administrative Remedies

Further, while Plaintiff states that she filed a complaint with the EEOC, she again fails to describe the underlying EEOC discrimination charge and again fails to attach a right to sue letter indicating the permissible scope of claims that the Court may hear. (Doc. 6, 4.) As discussed in the Court's screening of Plaintiff's initial complaint, without the EEOC right to sue letter, the Court cannot determine whether there has been substantial compliance with the law's administrative exhaustion requirement, and therefore cannot hear *any* claim against Defendant under Title VII of the Civil Rights Act.

Title VII requires a plaintiff to file an administrative claim with the EEOC against their employer[1] within one hundred and eighty days after the alleged unlawful employment practice occurred. 42 U.S.C § 2000e-5. The EEOC issues a "right-to-sue" notice permitting a civil action to be brought against the employer within ninety days. *Id.*, § 2000e–5(f)(1). Substantial compliance with the administrative exhaustion process is a jurisdictional prerequisite to the filing of a civil action against that employer under federal law. *See Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001) (Title VII); *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (Rehabilitation Act). The scope of the EEOC complaint determines the permissible scope of the claims that may be presented in district court. *Leong*, 347 F.3d at 1122.

If plaintiff has filed a charge with the EEOC against Defendant, she "must allege the facts relevant to that charge, including: (1) the alleged violation(s); (2) when the charge was filed; and

---

[1] It is unclear from the first amended complaint whether Defendant is an "employer" under Title VII of the Civil Rights Act.

7

(3) who it was against.  The charge itself should be attached as an exhibit if possible." *Whitsitt v. Hedy Holmes Staffing Servs.*, No. 2:13-CV-0117-MCE-AC, 2014 WL 5019667, at *5 (E.D. Cal. Oct. 7, 2014).  A description of the charge to the EEOC and a copy of the right-to-sue notice are necessary to provide the Court with jurisdiction to hear Plaintiff's claims and to determine the scope of its review.  *Leong*, 347 F.3d at 1122.  Plaintiff provides neither.  Without these, the Court cannot determine whether Plaintiff has exhausted her administrative remedies, and whether it has jurisdiction to proceed with the case.

### 2. Plaintiff Does Not Allege Facts Supporting a Claim of Violation of the Rehabilitation Act

Plaintiff alleges that her Workers' Compensation benefits were terminated in October of 2003, she was "denied the right to due process and terminated on May 9, 2008, without ever [being returned] to work with reasonable accommodations[,]" and she was denied disability retirement in April and December of 2013, all in violation of the Rehabilitation Act.  (Doc. 6, 3-4.)

Though Plaintiff concludes that she was denied various benefits "based on [her] disabilities[,]" it is unclear from the first amended complaint how these benefits were denied based on disability.  Instead, Plaintiff provides two rationales for the denial of disability retirement – neither of which are based on her disability.  She alleges that she was told to "[g]et another government job" in order to qualify, and that she was formally denied disability retirement for not meeting the mandatory age requirement until the year 2020.  (Doc. 6, 4.)

Section 504 of the Rehabilitation Act prohibits any "otherwise qualified individual . . . be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" solely on the basis of his or her disability." 29 U.S.C. § 794(a).  "To establish a violation of Section 504 of the Rehabilitation Act, a plaintiff must show that: (1) she is handicapped within the meaning of the Rehabilitation Act, (2) she is otherwise qualified for the benefit or services sought, (3) she was denied the benefit or services solely by reason of her handicap, and (4) the program providing the benefit or services receives federal financial assistance." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (citing *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997));

*see also Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

Under the Rehabilitation Act, Plaintiff must show that she was denied benefits by reason of her disability. *Duvall*, 260 F.3d at 1135. Here, Plaintiff does not state facts that plausibly support the conclusion that she was denied disability retirement or Workers' Compensation benefits because of her disability. In fact, the only reasons she has identified for Defendant's denial of disability retirement are *not* based on her disability. (Doc. 6, 4.) Plaintiff's conclusory statements that she was denied benefits and "discriminated against based on [her] disabilities" (Doc. 6, 4) are not sufficient to support a cause of action for a violation of the Rehabilitation Act. *See Iqbal*, 556 U.S. at 678 (the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

Because Plaintiff has failed to allege facts indicating she was denied any benefit or services solely by reason of her disability, the first amended complaint fails to state a claim under the Rehabilitation Act. *Lovell*, 303 F.3d at 1052.

**B.     Leave to Amend Should Be Granted**

Plaintiff's amended complaint has not set forth a cognizable federal claim under *either* Title VII of the Civil Rights Act or the Rehabilitation Act. Because Plaintiff has not remedied the deficiencies of her original complaint, and still fails to plead facts invoking the Court's jurisdiction, the FAC must be dismissed. 28 U.S.C. § 1915(e)(2); *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) ("A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction.").

Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND. Plaintiff will be given another opportunity to remedy the deficiencies of the complaint as discussed above. Plaintiff must allege **sufficient facts** in her amended complaint to both invoke the Court's jurisdiction *and* show that she has exhausted her administrative remedies.

Plaintiff is advised that an amended complaint supersedes the original complaint. *See Lacey v. Maricopa County*, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Rule 220 of the Local Rules of the United States District Court, Eastern District of California.

9

Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. If Plaintiff fails to file an amended complaint or fails to cure the deficiencies identified above, the Court will recommend that the complaint be dismissed with prejudice.

### IV.   CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is DISMISSED;
2. Plaintiff shall file an amended complaint within 30 days from the date of service of this order; and
3. If Plaintiff fails to file an amended complaint, the Court will recommend that this action be dismissed for failure to state a cognizable claim.

IT IS SO ORDERED.

Dated:   **February 17, 2015**                    /s/ Sheila K. Oberto
                                                                  UNITED STATES MAGISTRATE JUDGE